WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pipeline Technologies Incorporated, | No. CV-13-02104-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Telog Instruments Incorporated, et al., | |
| Defendants. | |

Before the Court is a patent infringement action filed by Plaintiff Pipeline Technologies Incorporated. For the reasons that follow, the Court will sever and stay this action as to Defendant Applied Products Group, LLC, and transfer this action as to Defendant Telog Instruments Incorporated to the United States District Court for the Western District of New York.

**I.    Background**

In 2007 and 2008, Plaintiff Pipeline Technologies Incorporated, doing business as Pipetech International, secured two patents through the United States Patent and Trademark Office: (1) Patent No. 7,219,553 ("'553"), and (2) Patent No. 7,357,034 ("'034"). (Doc. 1 at ¶¶ 9, 18.) Patents '553 and '034 are collectively described as a "dynamic transient pressure detection system for detecting and recording variations in pressure inside operating fluid chambers." (Doc. 1 at 13, 17, 22, 26.) In short, at issue is a sensor device which can be installed into a utility pipeline that detects changes in pressure, such as one caused by a sudden increase in gas, sewage, or water, and remotely

records and reports that data by signal to a receiver.

Plaintiff commenced the instant action against Defendants Telog Instruments Incorporated ("Telog") and Applied Products Group, LLC ("APG"), arising from the manufacture and sale of Telog's devices referred to as "Telog LPR-3li" and "Telog HPR-3li." (Doc. 1 at 4.) In the first count of its Complaint, Plaintiff alleges that Telog and APG have infringed the '553 patent. (Doc. 1 at ¶ 10.) In the second, Plaintiff alleges that Telog has also infringed the '034 patent. (Doc. 1 at ¶ 19.)

Following the submission of a settlement report (Doc. 94),[1] the Court called the parties to address the propriety of joinder and venue. In response, Defendants have moved to sever the claims, arguing APG is merely a "peripheral defendant" and that the claims alleged by Plaintiff against it are simply to establish venue in this district. (Doc. 101 at 15-17; Doc. 101-1 at 17-20.) Defendants further move to transfer the claims against Telog to the Western District of New York, and to stay the claims in this district against APG pending the resolution of the claims against Telog.

**II. Discussion**

    **A. Joinder, Severance, and Stay**

In patent actions, joinder is governed by the Leahy-Smith America Invents Act ("AIA"),[2] which provides:

> (a) Joinder of accused infringers.—With respect to any civil action arising under any Act of Congress relating to patents… parties that are accused infringers may be joined in one action

---

[1] Defendant Applied Products Group, LLC reported that it "knows that it has been sued essentially solely for the purpose of keeping venue of the lawsuit in Arizona" and "feels like a local pharmacist that has been sued in order for a plaintiff to obtain a favorable forum in which to litigate against a pharmaceutical manufacturer." (Doc. 94 at 2-3.) Although the report indicated that the parties agreed APG should be dismissed from this case, they asserted that "Plaintiff has resisted such a dismissal because it is concerned that the Court might transfer venue *sua sponte*." (Doc. 94 at 3.)

[2] Joinder of claims in civil actions commenced prior to September 16, 2011 is evaluated under Rule 20 of the Federal Rules of Civil Procedure. *See In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012). 35 U.S.C. § 299(a) governs joinder analysis in actions commenced after this date. *Id.* AIA's joinder provision "is more stringent than Rule 20" of the Federal Rules of Civil Procedure, "and adds a requirement that the transaction or occurrence must relate to making, using, or selling of the same accused product or process." *In re Nintendo*, 544 Fed. Appx. 934, 939 (Fed. Cir. 2013).

2

> as defendants or counterclaim defendants, or have their actions consolidated for trial ... only if—
>
> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and
>
> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.
>
> (b) Allegations Insufficient for Joinder.—For purposes of this subsection, accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit.

35 U.S.C. § 299. Thus, "[t]he mere fact that infringement of the same claims of the same patent is alleged does not support joinder, even though the claims would raise common questions of claim construction and patent invalidity." *In re EMC Corp.,* 677 F.3d at 1357.[3] Rather, there must be "substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. In other words, the defendants' allegedly infringing acts, which give rise to the individual claims of infringement, must *share* an aggregate of operative facts," *id.* at 1358, "relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product," 35 U.S.C. § 299(a)(1).

Here, Plaintiff has not offered allegations sufficient for joinder. *See* 35 U.S.C. § 299(b). In the Complaint, Plaintiff alleges that Telog and APG "have in the past and continue to infringe, directly, indirectly, literally, under the doctrine of equivalents, contributorily, and/or through the inducement of others, one or more of the claims of the

---

[3] The Court is without guidance from the Federal Circuit or the United States District Court for the District of Arizona regarding the application of AIA's joinder provision. Therefore, it has looked to other district court decisions, and joins them in evaluating 35 U.S.C. § 299 using the same-transaction test as applied under Rule 20. *See e.g., Digitech Image Technologies, LLC v. Agfaphoto Holding GmbH*, 2012 WL 4513805, *2 (C.D. Cal. October 1, 2012); *Richmond v. Lumisol Elec. Ltd.*, 2014 WL 1716447, *4 (D. N.J. April 30, 2014); *MGT Gaming, Inc. v. WMS Gaming, Inc.*, No. 12–741, 2013 WL 5755247, at *7–8, 10 (S.D. Miss. October 23, 2013).

3

'553 Patent by making, using, importing, selling and/or offering to sell, in this judicial district and elsewhere in the United States, devices which are covered by at least one claim of the '553 Patent." (Doc. 1 at ¶ 10.)[4] In the parties' briefing, they explain that pursuant to an agreement between Defendants, APG was to "solicit orders for and promote the sale of" the alleged infringing devices offered by Telog in Arizona, New Mexico, and Southern Nevada, for which APG's compensation was to be a commission. (Doc. 101-1 at 18.)

Other district courts confronted with similar scenarios have found that "defendants operating at different levels in the same stream of commerce—for example, one manufacturer defendant (the upstream defendant) and one retailer defendant (the downstream defendant)—can be properly joined pursuant to § 299 where the upstream defendant provides the product to the downstream defendant." *Richmond v. Lumisol Elec. Ltd.*, 2014 WL 1716447 (D. N.J. April 30, 2014) (citing cases). In this case however, Telog did not provide the device to APG, who then in turn sold or used the device.[5] The transactions giving rise to the claim against APG, namely the solicitation and promotion of the infringing device, are different from the transaction giving rise to Telog's alleged liability – the manufacturing and sale of the infringing device. Telog's sales constitute separate transactions, whether completed with or without the assistance of a sales

---

[4] In patent infringement cases, a plaintiff may bring three types of claims: direct infringement under 35 U.S.C. § 271(a), induced infringement under 35 U.S.C. § 271(b), and contributory infringement under 35 U.S.C. § 271(c). The complaint does not specify which type or types of claims are brought against each defendant.

[5] *Cf. MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F.Supp.2d 647, 660 (S.D. Miss. 2013) ("Aruze manufactures gaming machines and allegedly provides them to Penn under a revenue sharing agreement in which Aruze provides ongoing assistance for the upkeep of the machine. Thus, the offering for sale and sale of each accused machine from Aruze to Penn constitutes a series of transactions. Penn's use of the machine in an ongoing relationship with Aruze constitutes a series of related transactions."). *But see Digitech Image Technologies, LLC v. Agfaphoto Holding GmbH*, 2012 WL 4513805, *4 (C.D.Cal. October 1, 2012) ("Best Buy's patent liability arises from its sale (or offer for sale) of the Leica camera to an end-user. This is entirely different from Leica's liability, which arises from its sale (or offer for sale) of its camera to Best Buy (and others)… Thus, Defendants do not share an aggregate of operative facts. Other than the cameras themselves, the various Defendants have stumbled into liability under entirely separate facts and transactions in the commerce stream. And so, the Court finds that Defendants should be severed based on their independent participation in commerce.").

solicitor or promoter.[6] Further, the vast majority of Telog's sales of the purported infringing devices are wholly unrelated to APG. The parties report that APG's affiliated sales account for only a fraction of Telog's overall sales of the alleged infringing devices. While Telog estimates a total value of the sales of the "3li devices" at $200,000, APG reports that the sales in which they were affiliated totaled $15,245. (Doc. 101-1 at 18.) Plaintiff has therefore not demonstrated that its cause of action against the two defendants arise out of the same transactions or series of transactions under 35 U.S.C. § 299.

Even if Plaintiff's claim against Telog and APG set forth allegations sufficient for joinder, "joinder may still be refused in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *In re Nintendo Co., Ltd.,* 544 Fed. Appx. 934, 939 (Fed. Cir. 2013) (internal quotations and citations omitted). Under Rule 21 of the Federal Rules of Civil Procedure, the district court has broad discretion to sever claims, and "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "[S]everance is appropriate where: (1) the claim to be severed is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims otherwise is warranted under § 1404(a)." *MGT Gaming, Inc.*, 978 F.Supp.2d at 664.

Finding all three criteria are satisfied, the Court concludes both severance and stay are appropriate. First, it is clear that Telog represents "the real party in interest," and APG is peripheral to the claims against it. *Richmond v. Lumisol Elec. Ltd.*, 2014 WL 1716447, *4 (D. N.J. Apr. 30, 2014). APG is a "second-hand" entity who lacks "substantive knowledge about the patent infringement, which would begin at the design and manufacture stages." *Id.* In fact, "[i]t's unclear what, if anything, the claims against

---

[6] To the extent Plaintiff appears to argue that APG infringed its patents by *jointly and directly selling* Telog's device (Doc. 101 at 7-8), the unviability of this argument makes it insufficient to support joinder. *See MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005); *Golden Hour Data Systems, Inc. v. emsCharts, Inc.,* 614 F.3d 1367, 1381 (Fed. Cir. 2010); *Lineage Power Corp. v. Synqor, Inc.*, 2009 WL 90346 (W.D. Wis. 2009).

[APG] can contribute to [Plaintiff's] infringement action against [Telog]. The obvious reason [Plaintiff] joined [APG] in this action was to establish venue." *Oplus Technologies, Ltd. v. Sears Holding Corp.*, 2012 WL 2400478, *5 (N.D. Ill. June 21, 2012). The peripheral nature of APG's involvement in this case is evident by Telog's agreement to indemnify it should APG be dismissed. (*See* Doc. 94 at 3.) Second, the adjudication of the claims against Telog will be dispositive of the claim against APG. The claim against APG is dependent upon whether Telog manufactured a device that infringes Plaintiff's patents. Lastly, transfer of the remaining claims against Telog is warranted. *See infra.* Therefore, concluding that it will simplify the issues in this case and reduce the burden of litigation on the parties, Plaintiff's claim against APG will be severed and stayed.[7]

### B.  Transfer of Venue

Change of venue in patent cases, like other civil cases, is governed by 28 U.S.C. § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. § 1404(a).[8] The district court has discretion to evaluate transfer requests "according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). It may consider, among other factors:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to

---

[7] The parties previously reported the possibility of settlement of the claim against APG. Therefore, while staying the claim, the Court will also call the parties to clarify whether they wish this action to remain stayed pending the resolution of the claims against Telog, or if they desire to have the action referred for a settlement conference.

[8] The parties do not dispute that this case could have been originally brought in the Western District of New York. *See* 28 U.S.C. §§ 1400(b), 1404(a).

6

> compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d at 498-99. In this consideration, defendants bear the burden of demonstrating that transfer is appropriate, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-256 (1981), and plaintiff's choice of forum should not be upset absent a strong showing of inconvenience by the defendants, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000).

In weighing these factors, the Court finds the convenience and cost of attendance for the parties and witnesses favors transfer. *See In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009) (finding "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."). Plaintiff is an Arizona corporation, comprised of Will Worthington, its president. Plaintiff has no employees and does not hold office space. (Doc. 101-1 at 25-30.) Comparatively, Telog, a corporation with roughly 35 employees, is headquartered and has its principal place of business in New York. Telog argues that its primary material witnesses in this action are among its personnel, who are located in New York and are knowledgeable about the devices at issue and Telog's product marketing and sales. These individuals include its president Berry Ceci, vice president Carl Quallo, software architect Bashir Ahmed, and project engineer Everett Lago. (Doc. 101-1 at 15.) Plaintiff has identified two witnesses, a representative of third-party corporation Qameleon, Inc., who assisted in the development of the system underlying Plaintiff's '034 patent, and its inventor Loran Worthington, both located in Arizona. (Doc. 101 at 12.) Although Plaintiff asserts Worthington's mobility is limited, it does not contend that his limitation would preclude him from traveling to New York.

Plaintiff argues that transferring this case would merely shift inconvenience and cost from Telog to Plaintiff. However, any shift in burden is diminished by Telog's offer

to pay Plaintiff's travel costs. Telog maintains that paying the expenses incurred by Plaintiff to litigate its case in New York is a financially advantageous alternative to litigating its case in this forum. Thus,

> Presuming this case is transferred to the Western District, Telog offers to pay the reasonable travel, hotel, and food expenses for (1) Mr. Will Worthington to attend any *Markman* hearing or trial in that district, (2) any of Pipeline's expert witnesses to travel to that district to testify, and (3) the purported inventor, Loren Worthington, Mr. Worthington's son, to testify in that district.

(Doc. 101 at 19-20.) This factor is compelling and favors transfer, as it would reduce the overall cost of litigation without increasing Plaintiff's expenses.

The Court concludes that Telog has made a showing sufficient "to warrant upsetting [Plaintiff's] choice of forum." *Decker Coal Co.*, 805 F.2d at 843. The remaining disputed factors by the parties are neutral, and neither support nor dissuade the Court's conclusion. A plaintiff's choice of forum is usually given "substantial deference" where it has chosen its home forum, *Piper Aircraft Co.*, 454 U.S. at 266, but the parties' contacts with this forum is limited. Although Telog's alleged infringing products found their way into the Arizona market, their products are sold throughout the United States, and therefore the "venue chosen by the plaintiff [has] no more or less of a meaningful connection to the case than any other venue." *In re Nintendo Co., Ltd.,* 589 F.3d at 1198. While the parties dispute the cost of their respective counsel, they are both represented by counsel that practice in states other than the ones in which they reside. The parties' access to proof is also relative, as most documents will be produced electronically. Plaintiff offers nothing that indicates that its third-party witness would be unwilling to testify in New York, and Telog has offered to pay its travel expenses. Additionally, while the proposed transferee court suffers from docket congestion, it has adopted local patent rules to promote efficiency in adjudicating such cases. (Doc. 101 at 11, 21.)

Furthermore, the status of this case does not compel a contrary conclusion. As identified by Telog, this action was only recently reassigned to this Court and a *Markman*

Hearing has not been held. This Court has no greater familiarity with the issues and facts of this case than would the transferee court. Federal circuit law governs the law in this action, and a change in forum will not "rewind the clock" or adversely impact any prior briefing completed by the parties. Instead, the Court concludes that the convenience of the parties and the expense of litigation will be advanced by transferring this action to New York. Accordingly,

**IT IS ORDERED:**

1. That the claim against Defendant Applied Products Group, LLC is severed and stayed pending further order of the Court;

2. That Plaintiff and Defendant Applied Products Group, LLC shall file a report no later than **November 15, 2014**, addressing whether the action against Defendant Applied Products Group, LLC is suitable for referral for a settlement conference;

3. That the Clerk of Court shall transfer this action as to Defendant Telog Instruments Incorporated to the United States District Court for the Western District of New York;

4. That Plaintiff's Motions to Preclude (Docs. 90, 91) are **denied** without prejudice; and

5. That the hearing scheduled for **October 30, 2014** is **vacated**.

Dated this 15th day of October, 2014.

_____
Honorable Steven P. Logan
United States District Judge